**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| WEBROOT, INC. and OPEN TEXT, INC., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | NO. 6:22-cv-243-ADA-DTG (LEAD) |
| | § | |
| TREND MICRO INC., | § | NO. 6:22-cv-239-ADA-DTG |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | **PUBLIC VERSION** |
| TREND MICRO INC., | § | |
| | § | |
| Counter-Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| WEBROOT, INC. and OPEN TEXT, INC., | § | |
| | § | |
| Counter-Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| OPEN TEXT CORP. | § | |
| | § | |
| Counter-Defendant. | § | |

**DEFENDANT TREND MICRO, INC.'S MOTION
TO TRANSFER VENUE UNDER 28 U.S.C § 1404(A)**

# TABLE OF CONTENTS

I.  STATEMENT OF FACTS .................................................................................. 1

    A.  Plaintiffs have limited if any ties to this District. ................................. 1

    B.  Plaintiffs have particularly strong ties to the NDCA. ........................... 1

    C.  Trend Micro's relevant witnesses and documents primarily are in the NDCA. ..... 3

    D.  No known third-party witnesses are located in this District, but relevant parties reside in or nearer to the NDCA. .......................................... 4

    E.  Procedural History. ............................................................................... 4

II.  LEGAL STANDARD ..................................................................................... 5

III.  ARGUMENT .................................................................................................. 5

    A.  This case could have been brought in the NDCA. ................................. 6

    B.  The private interest factors favor transfer to NDCA. ............................ 6

        1.  The cost of attendance for willing witnesses favors transfer. .................... 6

        2.  The relative ease of access to sources of proof favors transfer. ................. 9

        3.  The availability of compulsory process to secure the attendance of witnesses favors transfer. .......................................................... 11

        4.  The practical problems that make trial of a case easy, expeditious, and inexpensive are neutral. ......................................................... 12

    C.  The public interest factors also favor transfer ..................................... 13

        1.  Local interest favors transferring this case to the NDCA. ....................... 13

        2.  Administrative difficulties due to court congestion favors transfer......... 15

        3.  The Court's familiarity with the law and the avoidance of conflicts concerning the application of foreign law factors are neutral.................. 15

IV.  CONCLUSION............................................................................................. 15

i

███████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adaptix Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013) ....................................................................................12

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   No. 6:13-CV-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014) ......................................14

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
   No. 6:19-cv-00355, 2020 U.S. Dist. LEXIS 197659 (W.D. Tex. Mar. 30, 2020) ....................8

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) .....................................................................................8, 13, 14

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) .......................................................................................11

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ..........................................................................9, 13, 14, 15

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .................................................13

*In re Atlassian Corp. PLC*,
   21-177, 2021 WL 5292268 (Fed. Cir. Nov 15, 2021) ..........................................................10

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .........................................................................................6, 15

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .......................................6, 8, 10

*In re Google LLC*,
   No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ....................................................7

*In re Google LLC*,
   No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) .................................................12

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .......................................................................................12, 13

*In re Juniper Networks, Inc.*,
   14 F. 4th 1313 (Fed. Cir. 2021) ........................................................................................9, 14

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ..............................................................................................5

███████████████████████████

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014)............................................................................2

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .........................................................................7, 8

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................5, 13

*Micropairing Techs. LLC v. Toyota Motor Mfg. Tex.*,
   No. 6-20-CV-01001-ADA, 2021 U.S. Dist. LEXIS 190585 (W.D. Tex. Oct. 1, 2021)...........8

*Phoji, Inc. v. Atlassian, Inc.*,
   No. 6:21-cv-00888-ADA, 2022 U.S. Dist. LEXIS 116531 (W.D. Tex. Jun. 23, 2022)...........7

*Polaris Innovations Ltd. v. Dell, Inc.*,
   No. 16-cv-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ...........................................9

*Texas v. Google LLC*,
   No. 4:20-CV-957-SDJ, 2021 WL 2043184 (E.D. Tex. May 20, 2021)..................................14

*Uniloc 2017 LLC v. Google LLC*,
   No. 18-cv-504-JRG-RSP, 2020 WL 3064460 (E.D. Tex. June 8, 2020)...............................11

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 2:17-CV-00258, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ...................................10

*Webroot, Inc. et al v. Crowdstrike Holdings et al*,
   No. 6:22-cv-00241-ADA-DTG (W.D. Tex. Sept. 7, 2022), EFC No. 56..............................13

*Webroot, Inc. et al v. Forcepoint LLC*,
   No. 6:22-cv-00342-ADA-DTG (W.D. Tex. Aug. 9, 2022), ECF No. 41 ..............................13

*Wet Sounds, Inc. v. Audio Formz, LLC*,
   No. A-17-cv-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)......................................8

## STATUTES

28 U.S.C. § 1391(c)(3)...............................................................................................................6

28 U.S.C. § 1400(b) ...................................................................................................................6

28 U.S.C § 1404(A) ...........................................................................................................1, 1, 5

35 U.S.C § 102(b) ....................................................................................................................11

███████████████████████████████████

Defendant Trend Micro Inc. ("Trend Micro") respectfully moves to transfer this case to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a).[1] Each requisite factor of the section 1404 analysis either weighs in favor of transferring this case or is, at least, neutral. Transfer to the NDCA is therefore warranted.

Webroot, Inc. ("Webroot") and Open Text, Inc. ("Open Text") (collectively, "Plaintiffs") allege that Trend Micro infringes eleven patents—five of which were added to this case just two months ago—related to security software. *First*, the design, development, and marketing of that software is largely centered in the NDCA. *Second*, the NDCA is the *only* forum where all parties are located. Open Text is headquartered there and Webroot has one of its two U.S. offices there— the other being in Colorado. Trend Micro is not aware of relevant Plaintiffs' witnesses in this District and the complaint does not identify any. *Third*, the NDCA is home to relevant non-party witnesses, including named inventors and prior art witnesses who worked on versions of the Accused Products that pre-date the asserted patents.

## I.    STATEMENT OF FACTS

### A.    Plaintiffs have limited if any ties to this District.

Webroot, which is the assignee of the asserted patents (Dkt. 53 ¶ 18), has no connection to this District; its headquarters are in Broomfield, Colorado and its other U.S. office is in San Jose. *See* Decl. of Matthias Kamber ("Kamber Decl."). As for Open Text, it alleges that it has three Texas offices, including two in this District; however, it makes no allegations that these offices played any part in events related to this litigation. Dkt. 53 ¶ 22. Open Text only holds an exclusive license to the asserted patents (Dkt. 53 ¶ 21) and did not play a part in developing the alleged inventions. Nor are any of Open Text's executives—individuals who may have information relevant to this case—based in these offices. *See infra* at 2.

### B.    Plaintiffs have particularly strong ties to the NDCA.

Plaintiffs appear to have their strongest collective presence in the NDCA. Webroot has one of its two U.S. offices in San Jose; Open Text's U.S. headquarters is in Menlo Park and it lists

---

[1] Trend Micro files this motion before the November 16 deadline. *See* Lead Case, Dkt. 50 at 3.

another office in Pleasanton. Ex. 1.[2] Notably, half of Open Text's fourteen executives are based in the NDCA: Mark Barrenechea (Chief Executive Officer and Chief Technology Officer), Madhu Ranganathan (Chief Financial Officer), Sandy Ono (Chief Marketing Officer), Muhi Majzoub (Chief Product Officer), Brian Sweeney (Chief Human Resources Officer), Simon Harrison (Executive VP, Enterprise Sales), and Paul Duggan (Executive VP, Worldwide Renewals). Ex. 4 at 40. Whether these individuals or others that report to them are the most relevant witnesses, venue discovery is expected to reveal that numerous Open Text employees based in the NDCA have relevant information concerning the allegations of lost profits (Dkt. 53 ¶¶ 16, 152, 186, 219, 250, 284, 318, 358, 396, 434, 472, and 499) and Trend Micro's marking defense, including (i) the sales, marketing, and finances of Open Text's and Webroot's products; and (ii) the design and operation of those products. None of Open Text's other executives are located in WDTX; therefore, their location is immaterial to the transfer analysis. *Id.*; *see In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

What limited public information is available shows that numerous Open Text and Webroot employees within the NDCA have knowledge about Open Text and Webroot products that are relevant to Trend Micro's marking defense and to damages. These witnesses include Sharada Achanta (Open Text Vice President of Product SMB-C), JiaChu Zhao (Webroot Sr. Software Engineer), Phanindra Nukala (Webroot Sr. Quality Assurance Engineer), and Sam Kumarsamy (Open Text Director of Marketing) who are knowledgeable about Webroot SecureAnywhere, which Plaintiffs contend practices the asserted patents, *see* Dkt. 53 ¶ 11, and BrightCloud Threat Intelligence, which Plaintiffs contend practices at least five of the eleven asserted patents. Exs. 5–8, 13. Other employees in the NDCA who are knowledgeable about Plaintiffs' products and business include Yixin Ma (involved in developing Webroot DNS Policy APU Microservice); Chunxue Luo (involved in developing Webroot DNS Anywhere API Service), Arto Tiovolva (Open Text Sr. Account Executive involved in selling Customer Experience Management and

---

[2] Unless otherwise stated, all exhibits referenced herein are attached to the Kamber Decl.

████████████████████████████████████████

Enterprise Content Management), and Shaun Sullivan (Open Text Sr. Account Executive with experience selling Endpoint Security, Enterprise Search, and Artificial Intelligence). Exs. 9–12.

### C.    Trend Micro's relevant witnesses and documents primarily are in the NDCA.

As it relates to this case, Trend Micro also has its strongest presence in the NDCA. Trend Micro's San Jose office is the strategic center of its U.S. development work for various Accused Products. Decl. of Eric Shulze ("Shulze Decl.") ¶ 6. As of August 2022, that office employed approximately ██ people, plus around ██ remote employees who live in California. *Id*. Based on a detailed investigation, Trend Micro has identified several of those employees as having relevant knowledge for several of the Accused Products, including Deep Discovery XDR, Deep Discovery Analyzer, Vision One, and Predictive Machine Learning Engine. Shulze Decl. ¶ 7; *see also* Exs. 14–15 (infringement contentions). Specifically, Trend Micro has identified 14 engineers and a product manager who have the most relevant knowledge regarding the operation of the accused functionalities, including ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████. Shulze Decl. ¶ 7 (detailing position and knowledge).

In addition, Trend Micro has identified employees in its offices in Taiwan who have relevant knowledge regarding the design, development, and operation of several of the Accused Products, including Deep Security, Deep Discovery Inspector, Deep Discovery Analyzer, Deep Discovery Director, Apex One, Apex Central, Vision One, XDR, Smart Protection Network, TrendX, and Predictive Machine Learning Engine. *Id*. ¶ 11.

Although Trend Micro has two comparatively larger offices in Texas, the work conducted at those offices is not particularly relevant to this litigation. In mid-2013, Trend Micro moved its headquarters from Cupertino to Irving, Texas (in the NDTX), which is now the base for non-engineering functions such as sales, marketing, business operations, customer support, and financial personnel. *Id*. ¶ 4–5. That includes ████████████, who is the most likely and relevant witness regarding Trend Micro's finances. *Id*. ¶ 14. But there is no research and development on any Accused Products occurring in Trend Micro's Irving office ████████████████

███████████████████████████████████████████

██████████████████████████████████████ *Id.* ¶ 13. Trend Micro also
maintains an office in this District, in Austin, Texas. *Id.* ¶ 5. As discussed more fully below,
however, Trend Micro's Austin office relates to products that are not directly at issue based on the
preliminary infringement contentions.

### D. No known third-party witnesses are located in this District, but relevant parties reside in or nearer to the NDCA.

Numerous non-party witnesses are located in the NDCA, whereas only one has been
identified in the WDTX. The potential NDCA witnesses include former Trend Micro employees
████████████████████, both of whom worked on products that are prior art to the asserted
patents. *Id.* ¶ 12.c; *see also* Ex. 16. Based on Plaintiffs' allegations, Trend Micro identified other
third-party witnesses related to prior art in its preliminary invalidity contentions. In total, Trend
Micro identified 21 relevant witnesses in the NDCA and 17 relevant witnesses in other parts of
California. Ex. 17 (highlighting California references in yellow). In contrast, only one third-party
prior art witness has been identified in this District. *Id.* (highlighting WDTX reference in green).

### E. Procedural History.

Plaintiffs filed the present action on March 4, 2022, alleging infringement of U.S. Patent
Nos. 8,418,250 ("'250 Patent"), 8,726,389 ("'389 Patent"), 9,578,045 ("'045 Patent"), 10,257,224
("'224 Patent"), 10,284,591 ("'591 Patent"), and 10,599,844 ("'844 Patent"). Dkt. 53 ¶ 13. On
September 7, 2022, Plaintiffs filed an Amended Complaint adding claims for infringement of U.S.
Patent Nos. 11,409,869 ("'869 Patent"), 8,856,505 ("'505 Patent"), 8,201,243 ("'243 Patent"),
8,719,932 ("'932 Patent"), and 8,181,244 ("'244 Patent"). Dkt. 53 ¶ 13. Plaintiffs served
infringement contentions on these five new patents on October 25. Trend Micro filed
counterclaims on May 16, 2022, asserting infringement of two of its own patents. Trend Micro
amended its counterclaims on August 4, 2022 (re-filed August 29), and October 25, 2022, to add
four patents, for a total of six asserted counterclaim patents. Dkt. 28; Dkt. 49; Lead Case, Dkt. 78.

On September 28, 2022, the Court entered a scheduling order setting three *Markman*
hearings: the first on January 11, 2023 to address the six patents initially asserted by Plaintiffs, the

second on March 8, 2023 to address Trend's counterclaim patents, and the last on April 17, 2023 to address the five patents Plaintiffs added to the case two months ago. Fact discovery for all asserted patents opens after the last *Markman* hearing on April 18, 2023.

## II.     LEGAL STANDARD

In evaluating whether transfer under Section 1404(a) is warranted, a court first considers "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted). If so, the court weighs eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interest decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (internal citation omitted). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citation omitted).

## III.     ARGUMENT

The applicable factors weigh persuasively in favor of transfer. The relevant witnesses and evidence related to the Accused Products are primarily in the NDCA. No development of the asserted patents occurred in WDTX and the Amended Complaint identifies no relevant witnesses in this District. In fact, Webroot has no meaningful connection to this District, and Open Text has its U.S. headquarters and another office in the NDCA. Numerous non-party witnesses, including named inventors and prior art witnesses, also reside in the NDCA. In sum, because most of the relevant witnesses and sources of proof are in the NDCA or more easily accessible from there, the balance of the factors decisively points to the NDCA as a more convenient venue for this case.

███████████████████████████████████████████████████

**A.      This case could have been brought in the NDCA.**

The threshold requirement for a transfer of venue is met here. Pursuant to 28 U.S.C. § 1400(b), Plaintiffs could have brought this action in the NDCA because Trend Micro has a regular and established place of business in San Jose, California. *See* Shulze Decl. ¶ 4.[3]

**B.      The private interest factors favor transfer to NDCA.**

**1.      The cost of attendance for willing witnesses favors transfer.**

The convenience of witnesses is the most important factor in the transfer analysis. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). If a substantial number of witnesses reside in one venue, this factor weighs in favor of the venue where the witnesses reside. *Id.* (citing *Volkswagen II*, 545 F.3d at 317); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). This factor favors transfer here.

The NDCA is more convenient for Trend Micro's relevant witnesses. As detailed above, a significant majority of the engineers knowledgeable about the design, development, and operation of various Accused Products are based in the NDCA. Shulze Decl. ¶ 7. Trend Micro employees who are familiar with prior art versions of certain Accused Products are also located in NDCA, such as ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ Shulze Decl. ¶ 12.a–b.

███████████████████████████████

---

[3] Trend Micro could have counterclaimed in the NDCA, where Open Text is headquartered and Webroot has a regular and established place of business. Exs. 1-2; U.S.C. § 1400(b). Venue is also proper there for Open Text Corp. as it is a foreign corporation. Dkt. 56 ¶ 8; 28 U.S.C. § 1391(c)(3).

██████████████████████████

By contrast, no engineer working on the Accused Products is based in a WDTX office or currently living in WDTX. *See id.* ¶¶ 8, 15–16. Rather, the engineers in Trend Micro's Austin office work on TippingPoint and Cloud One Network Security products, neither of which is among the Accused Products. *Id*. at ¶¶ 15–16. In fact, the infringement contentions identify TippingPoint only with respect to four dependent claims for two patents out of the 110 total asserted claims in six patents, and only for its integration with Vision One, a product developed out of San Jose and Taiwan. Ex. 14; *see Phoji, Inc. v. Atlassian, Inc.*, No. 6:21-cv-00888-ADA, 2022 U.S. Dist. LEXIS 116531, at *9–10 (W.D. Tex. Jun. 23, 2022) (witnesses knowledgeable about Jira Align product accused solely for integration with separate Jira product did not weigh against transfer because there was no showing that they were knowledgeable about the allegedly infringing functionalities). While TippingPoint forms part of Trend Micro's Network One, Plaintiffs infringement contentions accuse Network One only based on its integration with Trend Micro's XDR technology, which is developed in San Jose and Taiwan, and Apex One, which is developed in Taiwan. Ex. 14. Thus, Trend Micro does not anticipate any engineering witnesses from its Austin office testifying at trial.

With respect to sales of the Accused Products, Trend Micro has identified ███████████ in its Irving office as the most likely witness. *See supra* at § I.C. But ██████████ presence in Irving is unquestionably outweighed by the number of relevant witnesses in the NDCA. *See In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("*Volkswagen I*") (noting that it is "more convenient for witnesses to testify" at home). Further, Irving is in the NDTX, not the WDTX, and is almost two hours away by car. *See In re Google LLC*, No. 2021-171, 2021 WL 4592280, *4 (Fed. Cir. Oct. 6, 2021) (district court clearly erred by finding that one party witness in NDTX (Frisco, Texas), a "two-hour drive" from the Waco courthouse, effectively cancels out inconvenience to five party witnesses located in NDCA). Moreover, to the extent Plaintiffs contend that ████████ or others in Trend Micro's Irving office are likely witnesses, that would warrant transferring this case to the NDTX, not keeping it in this District (which has no relevant witnesses).

The NDCA is more convenient for Plaintiffs' witnesses as well. The NDCA is home to Open Text's U.S. headquarters and half of its executive team; therefore, Trend Micro expects that

venue-related discovery will reveal likely witnesses there. *See supra* § I.A.–B. Webroot also has an office in the NDCA, but not in this District. *See id.* § I.A. And numerous Webroot engineers who have knowledge relevant to lost profits and marking are based in the NDCA. *See id.* § I.B.

Given the location of most prospective witnesses, both the time and the distance witnesses would need to travel strongly favor transfer. Many of the relevant Trend Micro, Open Text, and Webroot employees would have to travel about 1,400 miles from San Jose to Waco to testify, resulting in costly and unnecessary travel expenses, missed work, and personal disruptions. *See In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) (citation omitted); *see also Volkswagen I*, 371 F.3d at 205) ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour."); *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) (same). Likewise, travel for Trend Micro's Taiwan-based employees favors transfer because the NDCA is much more convenient than this District, offering multiple, daily nonstop flights between San Francisco and Taipei on three different airlines, whereas there are no such options to Waco or even Dallas. *See In re Google LLC*, 2021 WL 4427899, at *4 (considering that "[t]here is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S"); Exs. 18–20. Moreover, Trend Micro employees from Taiwan could work at the Trend Micro facility in San Jose during their presence at trial with much less disruption than if they were required to travel to Waco, where they would lack access to corporate offices and fellow workers for the duration of their stay. *See Micropairing Techs. LLC v. Toyota Motor Mfg. Tex.*, No. 6-20-CV-01001-ADA, 2021 U.S. Dist. LEXIS 190585, at *11 (W.D. Tex. Oct. 1, 2021) (the cost of attendance for willing witnesses favored transfer where "the availability of a manufacturing plant in San Antonio with remote working areas limits disruptions to their regular duties brought about by court proceedings"); *Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-cv-00355, 2020 U.S. Dist. LEXIS 197659,

██████████████████████████████

at *4 (W.D. Tex. Mar. 30, 2020) (convenience of witnesses weighed in favor of transfer to Austin where defendant had offices in Austin, and out of town witnesses "can work in the Austin offices").

In sum, because most of the expected witnesses reside within the NDCA, comparatively few potential witnesses are in or near this District, and the NDCA is also much more convenient for likely witnesses from Taiwan, this most important factor decisively favors transfer. *See In re Juniper Networks, Inc.*, 14 F. 4th 1313, 1319 (Fed. Cir. 2021) (ordering transfer to the NDCA where defendant identified eleven potential party witnesses in the NDCA and plaintiff identified only one party witness in the WDTX). It also highlights how the facts of this case differ from those in *Kajeet, Inc. v. Trend Micro, Inc.*, where the Court denied Trend Micro's motion to transfer to the NDCA. *See* No. 6:21-CV-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022), *aff'd* No. 22-133, 2022 WL 1485183 (Fed. Cir. May 11, 2022) (non-precedential). Here, Plaintiffs have a strong presence in the NDCA, Trend Micro has identified numerous potential witnesses there, and—based on the infringement contentions—there is one likely Trend Micro witness in Irving and no likely party witnesses in the WDTX.

### 2.   The relative ease of access to sources of proof favors transfer.

The ease of access to sources of proof is the other factor of primary importance in the transfer analysis. *Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016). "[W]hile electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant." *Juniper*, 14 F.4th at 1321. This factor also favors transfer, for reasons similar to the first factor.

Here, the documents related to the infringement allegations are most easily accessible in the NDCA, and that documentation is deserving of particular weight in the transfer analysis. "'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *Genentech*, 566 F.3d at 1345). ████████████████████████████████

███████████████████████████ Shulze Decl. ¶ 10. ████████

██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id*.

████████████████████████████████████ *Id*. Second, as discussed above, engineering teams involved with development and support of various Accused Products have a significant presence in the NDCA. *Id*. ¶ 7. Consequently, their documents related to the designing, developing, and operating Accused Products are also primarily created and maintained in the NDCA. *Id*. ¶ 9. ████████████████████████████████████, and may also be stored as local copies on computers at the San Jose office (depending on an individual engineer's practices). *Id*.

Although Trend Micro also has facilities in Austin, Dkt. 53 ¶ 15, those facilities (and their personnel) focus on TippingPoint Threat Protection System and Cloud One Network Security, which are not accused products in this case. The presence of Trend Micro's facilities in Austin, therefore, does not change the balance of this factor. *See* Shulze Decl. ¶¶ 15–16; *see In re Atlassian Corp. PLC*, 21-177, 2021 WL 5292268 at *3 (Fed. Cir. Nov 15, 2021) (factor favors transfer where the "sole Texas employee on the engineering team ... is 'not knowledgeable about the accused functionalities' ... [and the] Austin employees do not have unique knowledge"); *In re Google LLC*, 2021 WL 4427899 at *4–5 (factor favors transfer where there was no explanation linking employees in Austin to the accused products).

Trend Micro also identified 7 products developed by McAfee as prior art to the asserted patents: McAfee Enterprise Security Manager, McAfee Advanced Threat Defense, McAfee Endpoint Protection Suite, McAfee Email Protection, Web Protection, McAfee Content Security Suite, and McAfee Mobile Virus Scan. Ex. 17. As such, relevant documents pertaining to these products are likely located at McAfee's headquarters in San Jose. Ex. 21. Their location, too, weighs in favor of transfer to the NDCA. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258, 2017 WL 11553227 at *6 (E.D. Tex. Dec. 22, 2017) (regarding ease of access to sources of proof, "[defendant's] prior art and marketing physical documents are likely relevant to the Parties' infringement and invalidity positions").

Plaintiffs have not identified, and Trend Micro is unaware of, any relevant evidence from

the Plaintiffs that is located in this District or elsewhere in Texas. Rather, Trend Micro expects the majority of Plaintiffs' relevant documents to be located either in (i) Webroot's San Jose office, in the NDCA, or its headquarters in Broomfield, Colorado, or (ii) Open Text's U.S. headquarters in the NDCA. Thus, because the majority of the relevant evidence is maintained in the NDCA, the ease of access to sources of proof strongly weighs in favor of transfer to that District.

### 3.    The availability of compulsory process to secure the attendance of witnesses favors transfer.

This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, *Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *see also Uniloc 2017 LLC v. Google LLC*, No. 18-cv-504-JRG-RSP, 2020 WL 3064460, *4 (E.D. Tex. June 8, 2020) (if "transferee venue is a venue with usable subpoena power," this "weighs in favor of transfer, and not only slightly").

The NDCA has subpoena power over some of the named inventors of the asserted patents. Specifically, two named inventors of the '844 Patent and recently added '869 Patent, Guarav Dala and Reza Yoosoofmiya, are located in the NDCA, and the third is located in Escondido, California. Dkt. 53, Ex. 22. The named inventors of the other patents are located in the United Kingdom, Italy, Austria, Illinois, and Colorado. Dkt. 53. Notably, none of the named inventors of the asserted patents are based in this District.

Additionally, the NDCA will have subpoena power over former Trend Micro employees knowledgeable about prior art versions of Accused Products, including their 35 U.S.C § 102(b) sale in the United States prior to the priority dates for the asserted patents. These include:



have been identified by Trend Micro as potential witnesses



in the pretrial disclosures of prior cases for their knowledge of prior art versions of products. Exs. 27–28. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

    In addition to former Trend Micro employees, other relevant prior art witnesses are located within the subpoena power of the NDCA. Some of these include Yinglian Xie, who authored "A Spatiotemporal Event Correlation Approach to Computer Security," and George Kurtz, who relates to the U.S. Patent No. 9,292,881 prior art patent. Exs. 30–31.

    By (stark) contrast, Trend Micro is aware of only one third-party prior art witness who resides within this District—Thayne Richard Coffman. *See* Ex. 17 (highlighting Coffman reference in green). Accordingly, this factor strongly favors transfer. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (factor favors transfer when transferee court had subpoena power over four more potential non-party witnesses than transferor court).

### 4. The practical problems that make trial of a case easy, expeditious, and inexpensive are neutral.

    As to the Section 1404 inquiry comparing the WDTX and NDCA, judicial economy is neutral. Transfer is evaluated based on "'the situation which existed when suit was instituted.'" *Adaptix Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 876–77 (E.D. Tex. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). This Court has no prior familiarity with the patents-in-suit, other than in co-pending cases that are still in their early stages. Those other cases, moreover, involve different defendants and different products. Any limited knowledge that this Court may gain based on those cases does not outweigh the factors that clearly favor transfer. *See In re Google LLC,* No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022) ("any judicial economy gained in having the district court preside over this case based on its prior familiarity with some

of the issues, from a prior claim construction in a different case [], is clearly insufficient … to outweigh the other factors that clearly favor transfer."); *In re Apple Inc.,* No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) ("We have 'rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor. . . . That suit involves a different defendant with different hardware and different software and thus is likely to involve significantly different discovery and evidence.").[4] No judicial efficiency will be lost by transferring this case to the NDCA.

### C.    The public interest factors also favor transfer.

#### 1.    Local interest favors transferring this case to the NDCA.

The local-interest factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Acer*, 626 F.3d at 1256 (citation omitted); *see also Volkswagen II*, 545 F.3d at 318 (explaining that this factor pertains to a forum's "connections with the events that gave rise to th[e] suit"). Here, the NDCA has a much stronger interest in this case.

There is a strong connection between the infringement allegations in this case and the NDCA. As detailed above, the design and development of numerous Accused Products by Trend Micro employees (to the extent it has taken place in the United States) has largely taken place in the NDCA. *See In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338 (local interest "self-evident" when accused products "developed and tested" in district); *In re Apple*, 979 F.3d at 1345 (favoring the transferee forum because the lawsuit "calls into question the work and reputation of several individuals residing" in northern California). By contrast, Trend Micro's Austin office focuses on unaccused product lines (TippingPoint and Cloud One Network Security) and support functions and has little, if any, connection to this lawsuit. *See, supra,* § III.B.1; Shulze Decl. ¶¶ 15–16.

The NDCA also has a strong local connection to Plaintiffs, and by extension their

---

[4] Furthermore, other defendants have moved for intra-district transfer, such that no co-pending case may proceed before this Court. Opposed Mot. to Transfer, *Webroot, Inc. et al v. Forcepoint LLC*, No. 6:22-cv-00342-ADA-DTG (W.D. Tex. Aug. 9, 2022), ECF No. 41; Opposed Mot. to Transfer, *Webroot, Inc. et al v. Crowdstrike Holdings et al*, No. 6:22-cv-00241-ADA-DTG (W.D. Tex. Sept. 7, 2022), EFC No. 56.

allegations of infringement and claims for lost profits. Open Text's U.S. headquarters and another office are located in the NDCA, and Webroot also has an office there. Exs. 1–2; *see Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184, at *7, *9 (E.D. Tex. May 20, 2021) ("'There is little doubt' that a district 'has a local interest in the disposition of any case involving a resident corporate party.'"); *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *3 (W.D. Tex. June 11, 2014) (the District where a party has its principal place of business has a strong local interest.). As detailed above, *supra* § II.B.1, several employees in those office are relevant to this case, and their presence in the NDCA creates a strong local interest. By contrast, Trend Micro is unaware of any connection between Open Text's employees and operations in its Austin and San Antonio offices and this lawsuit. The mere general presence of Trend Micro and Open Text in this District—Webroot does not have any known presence in this District—does not outweigh the NDCA's strong local interest in this lawsuit. *See In re Apple*, 979 F.3d at 1345 (instructing that this factor should not give great weight to general contacts that are "untethered to the lawsuit"); *Juniper*, 14 F. 4th at 1320 ("Juniper's general presence in [WDTX] is not enough to establish a local interest in that district comparable to that of [NDCA].").

In fact, the NDCA is the *only* district that has an interest in all three parties because each of them has offices there. Exs. 1–3. Moreover, each of those offices has a significant relationship to the allegations in this case. For example, U.S. development of Accused Products is centered at Trend Micro's San Jose office, where 14 engineers and a product manager who are knowledgeable about the operation of Accused Products currently work. *See supra* § I.C. There are also numerous Open Text and Webroot employees in the NDCA, including seven Open Text executives, who are knowledgeable about products that are relevant to Trend Micro's marking defense and to damages. *See supra* § I.B. In contrast, only Trend Micro and Open Text have offices in WDTX, and those offices have a weak, if any, connection to this case. Trend Micro's Austin office focuses on unaccused products, and Open Text's Austin and San Antonio offices are satellite offices that have no known connection to the asserted patents. Accordingly, the local interest factor strongly favors transfer to the NDCA. *See In re Acer*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (local interest strongly

favors transfer where "[t]he company asserting harm and many of the companies alleged to cause that harm are all residents of that district, as are the inventor and patent prosecuting attorneys").

### 2.   Administrative difficulties due to court congestion favors transfer.

The issue of court congestion also favors transfer. First, the NDCA's median time-to-trial for cases filed since September 18, 2018,[5] is 636 days, which is faster than this Court's median time-to-trial of 721 days. Exs. 32–33. Looking solely at patent cases, the comparison is even more favorable: the NDCA's median time-to-trial for cases filed since September 18, 2015,[6] is 614 days, whereas this Court's is 723 days. Exs. 34–35. This is unsurprising given this Court has far more open patent cases (753 cases) than the NDCA (243 cases). Exs. 36–37.

Second, even assuming this District had a slightly faster time to trial, that would not meaningfully impact the transfer analysis because "this factor appears to be the most speculative." *Genentech*, 566 F.3d at 1347. As the Federal Circuit has observed, "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. When, as here, "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.* at 1344 n.5 (quoting *Genentech*, 566 F.3d at 1347).

### 3.   The Court's familiarity with the law and the avoidance of conflicts concerning the application of foreign law factors are neutral.

The courts in both forums are experienced with the legal principles relevant to this case, as both forums routinely consider and decide cases arising under the Patent Act, and no conflict-of-law issues are present. Thus, these factors are neutral.

## IV.   CONCLUSION

For the foregoing reasons, Trend Micro respectfully requests transfer to the NDCA.

---

[5] For purposes of comparison, statistics are for cases filed subsequent to the date when the presiding judge in this case assumed judicial office.
[6] Due to more limited data, 2015 was used to have sufficient data for calculating median.

DATED:          November 16, 2022          PAUL HASTINGS LLP


By: */s/ Yar R. Chaikovsky*
     Yar R. Chaikovsky, Bar No. 39625
     yarchaikovsky@paulhastings.com
     Philip Ou
     philipou@paulhastings.com
     Bruce Yen
     bruceyen@paulhastings.com
     Radhesh Devendran
     radheshdevendran@paulhastings.com

1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:    1(650) 320-1800
Facsimile:     1(650) 320-1900

**THE DACUS FIRM**
Deron Dacus
TX Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

Attorneys for Defendant

████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record. further certify that the foregoing document and all supporting sealed attachment(s) have been provided to all counsel of record via secure FTP delivery shortly afterwards.

*/s/ C. Daniel Treviño*
C. Daniel Treviño

## CERTIFICATE OF CONFERENCE

Per local rule CV-7(G), I certify for Defendant that counsel for Defendant conferred in good faith with counsel for Plaintiffs regarding the relief sought in this motion and understand that Plaintiffs do not agree to the relief being requested.  On November 11, 2022, Trend Micro filed a motion seeking transfer of this case to the NDCA.  On November 15, 2022, Plaintiffs filed a motion in another case between the parties in the Eastern District of Virginia relying on the instant case in support of transfer to this Court.  Around 4 p.m. CT on November 16, 2022, the deadline to file a motion for inter-district transfer under this case's scheduling order (Lead Case, Dkt. No. 50), Plaintiffs emailed contending that Defendant did not meet and confer under Local Rule CV-7(g) and requesting that Defendant withdraw and re-file its motion after meeting and conferring with Plaintiffs.  Plaintiffs, however, only provided their availability to meet and confer *after* the transfer-motion deadline (Thursday and Friday).  Defendant's counsel responded and offered to meet and confer the same day (Nov. 16th) in order to re-file the transfer motion before the deadline, but Plaintiffs declined to do so and further declined to give Defendant its position or to confirm they oppose.  In view of Plaintiffs' lack of

response and motion to transfer to this Court in a co-pending case between the parties, Defendant understands that Plaintiffs oppose the relief sought in this motion.

*/s/ Philip Ou*

Philip Ou