## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **WEBROOT, INC. and**<br>**OPEN TEXT, INC.,**<br><br>*Plaintiffs,*<br><br>v. | |
| **AO KASPERSKY LAB,** | **W-22-CV-00243-ADA-DTG**<br>**(LEAD CASE)** |
| **TREND MICRO, INC.,** | **W-22-CV-00239-ADA-DTG** |
| **SOPHOS LTD.,** | **W-22-CV-00240-ADA-DTG** |
| **FORCEPOINT, LLC,**<br><br>*Defendants.* | **W-22-CV-00342-ADA-DTG**<br><br>███████████ |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE [ECF NO. 58], MOTION FOR RECONSIDERATION [ECF No. 119], AND MOTION TO STAY [ECF NO. 123]

Before the Court is a motion, filed November 11, 2022, by Trend Micro to transfer this suit (22-cv-239) to the Northern District of California ("NDCA") for convenience under 28 U.S.C § 1404. ECF No. 58. Plaintiffs filed their opposition on February 6, 2023. ECF No. 81. Trend Micro filed a reply in support of its motion on February 21, 2023. ECF No. 89. Plaintiffs filed a sur-reply on March 1, 2023. ECF No. 93. Trend Micro filed a sur-sur-reply on March 2, 2023. ECF Nos. 96, 97. The Court held a hearing on the motion on March 7, 2023. The Court considered the issues and arguments presented and **DENIED** the motion to transfer at the hearing.

1

On November 14, 2023, Trend Micro filed a motion for reconsideration of the ruling on transfer and an opposed motion to stay pending issuance of a written order. ECF No. 119. Plaintiffs filed a response to the motion for reconsideration on December 1, 2023. ECF No 130. Trend filed its Reply in support of its motion for reconsideration on December 8, 2023. ECF No. 134. Trend filed a motion on November 20, 2023, to stay the case pending a written order on transfer. ECF No. 123. Plaintiffs responded to the Motion to Stay on November 27, 2023. ECF No. 127. Trend filed a reply in support of its motion to stay on December 4, 2023. ECF No. 131.

This order memorializes the Court's ruling at the hearing on March 7, 2023. The Court has considered the arguments presented in the motion for reconsideration and motion to stay and finds that it should be **DENIED**. For the reasons discussed herein, the Court concludes that the NDCA is not a clearly more convenient venue to try this case; thus, it is not in the interest of justice for the Court to transfer this case. Therefore, the Court **DENIES** Trend Micro's Motion to Transfer.

## I.    FACTUAL BACKGROUND

This suit (22-cv-239) was filed on March 4, 2022, by plaintiffs Webroot, Inc. ("Webroot") and Open Text, Inc., ("OTI")[1] alleging patent infringement against defendant Trend Micro, Inc. ("Trend"). This suit has been consolidated with three other cases against three defendants as captioned above. Plaintiffs filed an Amended Complaint on September 7, 2022. ECF No. 53. In the amended complaint, Plaintiffs allege infringement of eleven U.S. Patents.[2] ECF No. 53 ¶ 13.

---

[1] Open Text Corp. ("OTC") was made party to this case as a Counterclaim-Defendant through Trend's Answer, ECF No. 18, and also opposes this motion to transfer. Collectively, this Court refers to Webroot, OTI, and OTC as "Plaintiffs."

[2] U.S. Patent Nos. 8,418,250 ("'250 Patent"), 8,726,389 ("'389 Patent"), 9,578,045 ("'045 Patent"), 10,257,224 ("'224 Patent"), 10,284,591 ("'591 Patent"), 10,599,844 ("'844 Patent"), 11,409,869 ("'869 Patent"), 8,856,505 ("'505 Patent"), 8,201,243 ("'243 Patent"), 8,719,932 ("'932 Patent"), and 8,181,244 ("'244 Patent").

Trend's counterclaims allege plaintiffs have committed infringement of five U.S. Patents.[3] ECF No. 49 ¶ 2. Inventors of the patents that Plaintiffs asserted against Trend are located in California, Illinois, Colorado, Great Britain, Italy, and Austria. ECF No. 81 at 5.

Plaintiff Webroot's[4] headquarters are in Broomfield, Colorado. Plaintiff OTI[5] is a Delaware corporation with its US Headquarters in Menlo Park, California, and an office in Pleasanton, California. OTI has four Texas offices, all either within this District or within 100 miles of the Waco Division Courthouse. ECF No. 81 at 1–2. OTI has ■ employees in Texas. *Id.* at 2. OTC is based in Waterloo, Ontario. Overall, Plaintiffs have ■ R&D employees in Texas, and ■ remote workers in NDCA, who perform various types of work on the research, design, and development of products that Trend has accused of infringement. *Id.* at 2–3.

The Complaint identifies the Trend Micro Security Suite as infringing, with the Accused Products said to include Apex One; Apex Central; Smart Protection Network; Deep Discovery XDR—Detection and response; Deep Discovery Endpoint Sensor; DeepSecurity; Cloud One-Workload Security; Cloud One Network Security; Deep Discovery; Deep Security; Vision One; Network One; Endpoint Protection with Detection and Response; and Trend's EDR/XDR and Cloud Products. ECF No. 53 ¶¶ 15, 114.

Trend's global headquarters is located approximately 100 miles from the Waco Courthouse in Irving, Texas (in the NDTX), with ■ employees. ECF No. 81 at 3; ECF No. 58-1 ¶ 4. Trend has an office in WDTX, with ■ employees in Austin. ECF No. 58-1 ¶ 5. As of August 2022, Trend's San Jose office employed approximately ■ people, plus around ■ remote employees

---

[3] U.S. Patent Nos. 8,838,992 ("'992 Patent"); 8,051,487 ("'487 Patent"); 8,443,449 ("'449 Patent"), 8,484,732 ("'732 Patent"), and 9,954,828 ("'828 Patent").
[4] Webroot is the assignee of the asserted patents.
[5] OTI is the exclusive licensee of the asserted patents.

who live in California. ECF No. 58 at 3. But Trend ████ its office at least as of December 30, 2022, which was also between the time that the opening transfer motion was filed and the response was due to be filed. ECF No. 81 at 1. Trend has brought counterclaims of patent infringement against 40 products from Plaintiffs Webroot, OTI, and Open Text Corp. *Id.* at 5 (citing Lead case (-243), ECF No. 78).

## II.    LEGAL STANDARD

A party who seeks transfer under § 1404 "must show good cause." *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) [hereinafter *Volkswagen II*] (quoting *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)).[6] The burden is not simply that the alternative venue is more convenient, but that it is "clearly more convenient." *Id.* Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as "it places a significant burden on the movant" to show good cause for the transfer. *Id.* at 314 n.10. The change of venue statute provides a district court authority to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). To "show good cause" means that a moving party "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)). "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* While "clearly more convenient" is not the same as the

---

[6] Regional Circuit law, here the Fifth Circuit's, governs this Court's determination of whether to transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1341–42 (Fed. Cir. 2009). The Federal Circuit, however, has issued opinions applying Fifth Circuit law to transfer motions, and the Court accounts for that body of law as well.

"clear and convincing" standard, the moving party must still show "more than a mere preponderance." *Quest NetTech Corp. v. Apple, Inc.*, 19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

"The determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* A trial court's evaluation of these factors and determination of whether the alternate forum is clearly more convenient is subject to an abuse of discretion standard on appeal. *In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 161 (Fed. Cir. 2022).

### III.   ANALYSIS

As to the threshold inquiry, the Court considers where this suit "might have been brought." 28 U.S.C. § 1404(a). The Federal Circuit held in a controlling case applying Fifth Circuit law, "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *In re*

*Genentech*, 566 F.3d at 1346. The Federal Circuit extended that aspect of the *Genentech* holding to counterclaims. *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 497 (Fed. Cir. 2014) (affirming district court holding that transferee court "possesses jurisdiction to decide the issues raised by the complaint, including the defenses and declaratory counterclaims"), *vacated on other grounds*, 564 F. App'x 599, 600 (Fed. Cir. 2014).[7]

The parties disagree over whether this case could have been brought in NDCA. Trend argues that this suit could have brought this action in NDCA. ECF No. 58 at 6 & n.3. Trend alleged in its transfer motion that Webroot had an office in San Jose. *Id.* at 1. The parties disputed this point throughout the response, reply, sur-reply, and sur-sur-reply briefing filed on this motion. Plaintiffs argue that the "permissive" counterclaims against Webroot could not have been brought in NDCA because Webroot does not have "an office or employees in the NDCA." ECF No. 81 at 1. Plaintiffs argue, therefore, that "NDCA is not a proper venue for Webroot for Trend's permissive patent infringement counterclaims." *Id.* at 16. While Trend acknowledges that Webroot's new address out of California was registered during the venue briefing of this case, Trend insinuates that it was done only for venue manipulation purposes, and that the newly registered principal place of business address is no place of business at all. ECF No. 97 at 1.

The Court is persuaded that this case could have been brought in NDCA. Section 1404(a)'s "might have been brought" standard under *Genentech* does not turn on where a counterclaim-defendant has a regular and established place of business. Neither party disputes that Plaintiffs could have sued Trend in NDCA. Given the *Genentech* standard, once such a case was properly

---

[7] Plaintiffs do not cite any cases holding that counterclaim defendants may not be transferred to a venue where they do not currently have a regular and established place of business, nor is the Court aware of such authority.

filed, Trend could assert whatever counterclaims it thought necessary. The Court is persuaded that the threshold inquiry is met and moves to an analysis of the private and public interest factors.

## A.  The Private Interest Factors

### 1.  The Relative Ease of Access to Sources of Proof

The Fifth Circuit has recently noted, this factor "bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). "[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). The "lesser inconvenience now" of access to sources of proof does not render this factor superfluous. *Volkswagen II*, 545 F.3d at 316; *Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (citing *Volkswagen II*, 545 F.3d at 316) (considering locations of servers for the relative access to sources of evidence). Additionally, the Federal Circuit has held that courts should consider "the location of document custodians and location where documents are created and maintained." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). The Fifth Circuit agreed with a district court that concluded that this factor does not weigh in favor of transfer because electronic evidence is equally accessible in either forum. *In re Planned Parenthood*, 52 F.4th at 630–31. In the absence of physical evidence, this factor entails at least two discrete inquiries when addressing electronic documents: the locations where electronic documents are stored, and the locations of the creators and custodians of the electronic documents. *Volkswagen II*, 545 F.3d at 316; *Def. Distributed*, 30 F.4th at 434 & n.25; *In re Google*, 2021 WL 5292267, at *2; *In re Juniper*, 14 F.4th at 1321.

Trend argues that this factor favors transfer as there are more sources of proof in NDCA. Trend asserts that its pertinent source code is stored in ███. Trend states it has a "source code repository" for the eleven accused products in ███████████. ECF No. 58-1 ¶ 10. Trend argues that documents pertaining to seven prior art products developed by McAfee "are likely located at McAfee's headquarters in San Jose." ECF No. 58 at 10. Trend's servers are in ███████, ███, and ███. Source Code for OpenText is located in ████████. Trend argues ██ California employees developed the accused OT products—██ are in NDCA with another ██ nearby. ECF No. 89 at 3, 6. Trend argues that the Cloud One Security Products are not relevant or ████ in that Trend characterizes Plaintiffs infringement contentions as accusing Network One only based on its integration with Trend's XDR technology. ECF No. 58 at 7.

Plaintiffs dispute this issue and point to sources of proof outside of NDCA. Plaintiffs argue that Trend has hardcopy sales and financial documents in ███ and that electronic source code or technical documents are also accessible there. ECF No. 81 at 7. After the Opening Motion was filed, but before the Response, Trend ██████ its NDCA Office into a ██████████████ ████, which Plaintiffs argue will be unsuitable for any future physical storage of documents. *Id.* at 4–5. Plaintiffs argue that given the ████ of the San Jose Office, these documents are now in the process of being relocated. *Id.* at 6. Plaintiffs specifically point to Trend's Irving headquarters being the site of technical development of the accused Cloud One Network Security product. *Id.* at 3. Trend identified ██ former employees in Texas who developed Cloud One Network Security. Plaintiffs point to Trend's statements in a previous case, *SecurityProfiling, LLC v. Trend Micro et al.*, No. 6:16-cv-01165 (E.D. Tex.), that the Irving headquarters is where "Trend Micro's U.S. Officers direct, control, and coordinate Trend Micro's product development and innovation

activities." ECF No. 81 at 3. Plaintiffs argue that Trend fails to explain why any hypothetical documents McAfee would exist in San Jose rather than McAfee's Texas location in Plano. *Id.* at 7 n.6. Plaintiffs argue that the "primary authors" of the Accused Products source code, are located in ███. *Id.* at 11.

In the Court's judgment, the accessibility of electronic data does not demonstrably favor either venue. *Volkswagen II*, 545 F.3d at 316; *Def. Distributed*, 30 F.4th at 434 & n.25; *In re Google*, 2021 WL 5292267, at *2; *In re Juniper*, 14 F.4th at 1321. Trend could not identify any evidence that is inaccessible in or from WDTX, but electronic accessibility anywhere is not the end of the inquiry. First, in the Court's judgment, document storage in NDCA is not entitled to significant weight given the ███ of Trend's office between the opening brief and response brief. Regarding electronic storage, the Court notes that Trend's Headquarters in Irving, TX is approximately 100 miles from the Waco Courthouse. Thus, the headquarters in Irving, Texas is more convenient to WDTX than the ███████ office to NDCA, for both any physical documents and assuming "that electronically stored documents are, in fact, physical." *Uniloc USA, Inc. v. Box, Inc.*, 17-cv-754, 2018 WL 2729202, at *2 (W.D. Tex. June 6, 2018). The Court proceeds to the second prong, as to creators and custodians. The Court finds Trend's headquarters in Irving, TX, and employees for both Plaintiffs and Defendant in the WDTX—Austin, Texas, metropolitan area—weigh against transfer. The Court recognizes the evidence showing Cloud One Network Security product was developed by employees located in ████ causes convenience for the parties in WDTX. Although Trend has employees in NDCA, between the filing of the opening motion and response motion, Trend's NDCA Office was ████. Trend fails to demonstrate which of its potential custodians are relevant. Although both Vision One and XDR are developed in ████ and ████, this means that there are sources of proof located both in the WDTX, in the

NDCA, and outside both venues. This fails to support a finding that relative ease of access to sources of proof favors transfer to NDCA. *Volkswagen II*, 545 F.3d at 314–15 & n.10.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc. v. Apple, Inc.*, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). The Federal Rules of Civil Procedure allow a court to subpoena a witness to attend trial (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021).

Trend argues availability of compulsory process in NDCA favors transfer because there are likely third-party witnesses there. Trend identifies ▉ former employees located within 100 miles of the Bay Area in NDCA knowledgeable about prior art versions of the Accused Products and three named inventors of the '487 Patent that Trend asserts as prior art. ECF No. 58 at 11–12. Trend argues that two named inventors of Plaintiffs' patents, the '844 and '869 patents, are located in NDCA, and one is located in Southern California. *Id.* at 11. Trend also points to a combined 83 witnesses in each side's respective invalidity contentions within the subpoena power of NDCA, ECF No. 89 at 5 (45 prior artists identified in Plaintiffs' invalidity contentions); *id.* (38 prior artists identified in Trend's invalidity contentions), but just three prior artists in WDTX who are in Plaintiffs' invalidity contentions, *id.* Trend's transfer motion identifies only one WDTX witness

by name from whom a subpoena would be necessary: Thayne Coffman, for his knowledge of prior art. ECF No. 58 at 12. Trend acknowledges that Plaintiffs identified ▇ third-party or former-employee potential witnesses under WDTX's subpoena power, but discounts them by asserting they were all identified for a single Trend product that Trend argues is one of the "unaccused product lines" (Cloud One Network Security). *Id.* at 13; ECF No. 89 at 4; ECF No. 119 at 8.

Plaintiffs argue that this factor is neutral. Plaintiffs argue there are ▇ former Trend employees in WDTX, ▇—▇▇▇▇▇, ▇▇▇▇▇, ▇▇▇▇, and ▇▇ ▇—are believed to be particularly relevant because they are knowledgeable of Cloud One Network Security product. ECF No. 81 at 8; ECF No. 130 at 10. Plaintiffs argue that the witnesses identified by Trend are redundant or unnecessary. Plaintiffs state that ▇ of the ▇ former Trend employees are identified as knowledgeable about prior art versions of the accused products and are knowledgeable of Deep Discovery and Deep Security products, while ▇ current employees are identified for that subject. ECF No. 81 at 8. Plaintiffs note that three named inventors are identified of the '487 patent, but that is "prior art to only a fraction of the patents being asserted against Trend." *Id.* at 8–9. Plaintiffs agree that Mr. Coffman, who lives in Austin, TX, is a relevant prior art witness because he is a named inventor of one of Trend's invalidity references. *Id.* at 9 n.7. Plaintiffs add that Mr. Black and Mr. Garrison both live in Austin, TX and are named inventors of U.S. Patent Application Publication No. 2003/0046582, one of Trend's alleged invalidity references, and are thus also relevant to this factor.

In the Court's judgment, each District has individuals that Trend and Plaintiffs have identified as likely compulsory process witnesses, who are weighed differently by the Court depending on the specific evidence of their likely testimony. The Court notes that both parties agree that Mr. Coffman is a relevant prior art witness based in WDTX. ECF No. 58 at 12; ECF

No. 81 at 9 n.7. Trend identifies Yinglian Xie, who wrote a prior art printed publication, and George Kurtz, who "relates" to a prior art patent. ECF No. 58 at 12. Plaintiffs specifically name two more inventors of another prior art patent who live in WDTX as well. ECF No. 81 at 9 n.7. The Court cannot ignore that the only witness both parties agree and rely upon as a likely third-party witness is located in WDTX. The Court will weigh Mr. Coffman heavily in the transfer analysis because the necessity of his testimony is relied upon and agreed by both sides. The Court recognizes that the former employee knowledgeable about the prior art version of the Smart Protect Network infrastructure product, ████████, is unrebutted by Plaintiffs. However, the Court does not assign much weight to the additional ████ former employees—████████, ████████, and ████████████—Trend identified with alleged knowledge about prior art versions of the Accused Products, Deep Discovery and Deep Security, because they are in addition to the ██ current employees who Trend identified on the same topic. ECF No. 58 at 6, 11. Trend's identification of three named inventors of the '844 and '869 patents is also entitled to little weight because the knowledge held by all three is repetitive. Plaintiffs in their briefing specifically name ███ former Trend employees with knowledge of Cloud One Network Security who reside within subpoena power of this Court. ECF No. 81 at 8. Trend's attempt to discount all of these witnesses because they are allegedly focused on "unaccused product lines" is inconsistent with the Complaint, which specifically accuses that product line. *E.g.*, ECF No. 53 ¶¶ 114, 118. Disagreements about the infringement contentions will undoubtedly be raised in this case and both districts have relevant witnesses whose testimony would require a subpoena.

Besides the witnesses who are specifically named, Trend offered lists of individuals but failed to specify individuals besides those discussed in the preceding paragraph for whom transfer to NDCA is likely needed to secure their probable testimony. For example, in reply Trend claims

there "are 291 individuals with material knowledge under the subpoena power of NDCA," but concedes "at least 101 of whom are potential witnesses." ECF No. 89 at 4. The implication by the difference between the numbers is that there are 190 individuals with material knowledge who are admittedly *not* potential witnesses; they are entitled to no weight for compulsory process in the transfer analysis. As to the 101 who are putative "potential witnesses," Trend failed to identify these individuals or state why they should all be entitled to any weight. Instead of identifying the individuals for whom NDCA's subpoena power is likely to be required to secure live trial testimony, Trend describes large groups of individuals. *Id.* ("OT has ██ former employees in NDCA"); *id.* (Plaintiffs have ██ former employees in other parts of California); *id.* at 5 (██ former employees in California have the same position as the likely witnesses Plaintiffs allegedly cherry-picked); *id.* (██ former employees in California have the same position as the likely witnesses Plaintiffs allegedly cherry-picked, *and are of higher-seniority*). The voluminous lists of witnesses do not demonstrate that this factor favors transfer. *Volkswagen II*, 545 F.3d at 314–15 & n.10.

When all of the evidence is considered, nothing under this factor demonstrates that an availability of compulsory process to secure the attendance of witnesses in NDCA favors transfer or makes NDCA clearly more convenient. *Id.*

### 3. The Cost of Attendance and Convenience for Willing Witnesses

The convenience for willing witness factor is the most important factor in the transfer analysis. *Marble VOIP Partners LLC v. RingCentral, Inc.*, 22-cv-259, 2023 WL 3938480, at *6 (W.D. Tex. June 9, 2023); *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021); *see also In re Genentech*, 566 F.3d at 1343. Under Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to willing witnesses increases in direct relationship to the additional distance they must travel if the matter is

transferred. *Volkswagen II*, 545 F.3d at 317. "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google LLC*, No. 2021-70, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). This factor focuses on total distance to travel as well as travel time. *Id.*; *In re Nintendo*, 589 F.3d at 1199 (applying Fifth Circuit law to hold that this factor clearly favored transfer when some key witnesses were from Japan and "would each have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington State."). The analysis for this factor includes and is also limited to current employees of Trend and Plaintiffs. Current employees can be presumed to appear as party witnesses willingly on behalf of their party employer. *DSCH Cap. Partners, LLC v. Hypower, Inc.*, 14-cv-348, 2015 WL 2151833, at *5 (W.D. Tex. May 7, 2015). But the parties provided no indication that any third-party witnesses are willing to testify, so those witnesses are presumed unwilling and were considered under the compulsory process factor above. *In re DISH Network*, 2021 WL 4911981, at *3. It is important to avoid "double counting" witnesses under both the compulsory process and willing witness factors. *Bering Sea Env't, LLC v. Peterson*, 18-cv-558, 2019 WL 13150079, at *5 (E.D. Tex. Aug. 15, 2019).

Trend argues this factor favors transfer. ECF No. 58 at 6. Trend identifies ▮ of its employees who are familiar with prior art versions of certain accused products, ▮▮▮ (Deep Security product); ▮▮▮ and ▮▮▮▮ (Deep Discovery and Network Insight Service (a pre-2014 version of the accused XDR product)); ▮▮▮▮, ▮▮▮▮, and ▮▮ ▮ (Deep Discovery). *Id* at 6. Trend identifies ▮ of the above (▮▮▮, ▮▮▮▮, ▮▮▮▮, ▮▮▮▮, and ▮▮▮) and ▮ other of its employees who are likely witnesses because they are knowledgeable about the operation of accused functionalities: ▮▮

██, ███████, ████████████, ████████, ██████, ██████, ███████, ████████, ██████████, and ████████. *Id.* at 3, 6; ECF No. 89 at 3. Trend points to employees of Plaintiffs in NDCA that Trend will allegedly call: ████████████, ██████████, ████████████████, ██████████████, █████████, ████████████, ████████████, and ██████████████. ECF No. 58 at 2–3. Trend states there are ████ OpenText executives in NDCA. *Id.* at 2, 7. In Reply Trend identifies ████ of Plaintiffs' executives in NDCA who are likely witnesses: ████████████; ██████████████; and ████████████. ECF No. 89 at 3. Trend states that Trend employee ████████████, in Irving, Texas, is the most likely witness with respect to Trend's finances and the sales of the Accused Products. ECF No. 58 at 3, 7. For the first time in Reply, Trend argues that ██████████, in Roseville, CA, is the most likely Cloud One Network Security witness. ECF No. 89 at 3; ECF No. 97 at 2. And Trend claims for the first time in reply that ████████████, Open Text's Director of Product Management (for Documentum), is a likely witness in NDCA. ECF No. 89 at 8.

Plaintiffs argue this factor weighs against transfer. Plaintiffs identify ████ Trend engineers in Irving, Texas, who work on writing software code that is included in the Accused Products. ECF No. 81 at 10 & n.9. Plaintiffs agree with Trend that ██████████████, who works in Trend's Irving, Texas office will testify regarding Trend's finances. *Id.* at 3 n.3, 10. Plaintiffs identify ████ other employees of Trend working in Texas who are likely witnesses: ████████, the ██████████████████████, and ████████████, Trend's ██████████████████████████████████████. *Id.* at 10; ECF No. 130 at 6. Plaintiffs identify their own witness, ██████████, who works in OTI's Austin office, as Plaintiffs' likely witness concerning the acquisition and ownership of the Asserted Patents. Plaintiffs allege that the Cloud One Network Security is "erroneously refer[ed]" to as unaccused by Trend, but in fact, there are ███ technical engineers in

the Austin Office familiar with it, some of whom will be necessary witnesses. ECF No. 81 at 9 & n.8. Plaintiffs respond to Trend's list of Plaintiffs' employees in NDCA that Trend will allegedly call by arguing the list is not tailored—three are no longer employees, one does not appear to exist, and one of them (JiaChu Zhao) is deceased. *Id.* at 10–11. Plaintiffs argue that Trend's list of employees is duplicative and there is no rationale for basing convenience on long lists of employees with overlapping and duplicative knowledge. *Id.* (citing *Koss Corp. v. Apple Inc*, 20-cv-665, 2021 WL 5316453, at *10 (W.D. Tex. Apr. 22, 2021)).

Trend rebuts certain likely witnesses preferred by Plaintiffs. Trend argues that its employee, Mr. ███ in NDTX, does "not do R&D," and does not independently "understand Trend's products." ECF No. 89 at 4. Trend argues that the ███ engineers in Irving identified by Plaintiffs "just fix bugs for products that have already been developed." *Id.*

In the Court's judgment, the parties' briefing on this factor does not demonstrate that either NDCA or WDTX has the majority of resident, material, likely witnesses. A court should "not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). Instead, a court should "qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.*; *Seven Networks, LLC v. Google LLC*, 17-cv-441, 2018 WL 4026760, at *8 (E.D. Tex. Aug. 15, 2018) (convenience factor analysis is more than "a judicial numbers game" of simply counting the prospective witnesses on each side); *see also Monterey Rsch., LLC v. Broadcom Corp.*, 21-cv-542, 2022 WL 526242, at *10 (W.D. Tex. Feb. 21, 2022) (same).

Trend identifies groups of its employees in NDCA who are willing witnesses—many of these individuals are duplicative. Trend identifies ███ employees who are familiar with prior art

16

versions of certain accused products; they are only knowledgeable of three unique accused products: ██ employee knowledgeable of Deep Security, ██ of Network Insight Service, and ██ of Deep Discovery. ECF No. 58 at 6; ECF No. 58-1 ¶¶ 12.a–b. Trend identifies ██ employees for their alleged knowledge of the operation of accused functionalities, for roles in connection with only two non-overlapping groups of product: that is, ██ employee is knowledgeable of Deep Discovery Analyzer, ECF No. 58-1 ¶ 7, and ██ are knowledge of Deep Discovery XDR and Vision One; or, Deep Discovery XDR and Vision One, *and* Predictive Machine Learning Engine. *Id.* ██ of those ██ are also part of the ██ familiar with prior art versions of certain accused products. Counting employees only once, and excluding individuals with redundant, duplicate knowledge, Trend's groups of ██ and ██ named Trend employees in NDCA reduce to just ██ unique Trend employees that Trend alleges it will call from NDCA.[8]

Trend identifies other groups of potential witnesses in NDCA, that work for Plaintiffs, that the Court finds are entitled to differing weights based on their materiality. Trend identifies ██ executives of Plaintiffs that Trend says are "likely witnesses." ECF No. 89 at 3; ECF No. 58 at 2. Plaintiffs do not dispute these executives are likely witnesses. The Court agrees with Trend that these executives of Plaintiffs are material, likely witnesses, and considers this group of ██ executives in the analysis. In contrast, Trend identifies a group of ██ of Plaintiffs' employees in NDCA that is duplicative because the ██ employees are knowledgeable about only two unique products allegedly relevant to Trend's marking defense and to damages: Webroot SecureAnywhere and BrightCloud Threat Intelligence. ECF No. 58 at 2. Trend identifies another group of ██ employees of Plaintiffs who are allegedly knowledgeable about various aspects of

---

[8] Trend's identification of its employee ██████, and Plaintiffs' employee ██████, in NDCA is not duplicative with other named potential witnesses, but Trend did not raise them for the first time until its reply brief, so the Court does not weigh them heavily in the analysis.

Plaintiffs' products and business. *Id.* at 2–3. Plaintiffs point out and the Court agrees that most of the employees in these two groups are not current employees (either through termination, death, or non-existence), meaning the ▋ putative employees in these two groups of ▋ are really a total of only ▋ current employees of Plaintiffs. ECF No. 81 at 11. These ▋ employees were found and described by Trend based solely on their LinkedIn profiles. ECF No. 58 at 2–3 (citing Exs. 8–10 (ECF Nos. 58-10–58-12)). This Court and the Federal Circuit have allocated "no weight" to witnesses found on Linkedin who are proffered without specific information. *Parus Holdings, Inc. v. Microsoft Corp.*, 21-cv-570, 2022 WL 17420391, at *5 (W.D. Tex. Dec. 4, 2022) (citing *In re Google*, 2021 WL 4427899, at *4). Similarly, here, the Court assigns little to no weight to the two groups of ▋ Plaintiffs' employees in NDCA that Trend proffers as likely witnesses. *Id.*

On the other hand, both parties agree that ▋▋▋▋—who works in Trend's Irving, Texas, headquarters—will testify in this case. ECF No. 58 at 3, 7; ECF No. 81 at 3 n.3, 10. On top of that, both parties agree that ▋▋▋, who works in OTI's Austin office, will testify concerning the asserted patents and licensing. ECF No. 81 at 10; ECF No. 89 at 4. (Further still, as discussed in the compulsory process factor, both parties agree that Thayne Coffman, in Austin, Texas, will be a third-party witness). Ms. ▋▋▋ and Mr. ▋▋ (and Mr. Coffman) are within approximately 100 miles of Waco and, thus, will not be inconvenienced by this case remaining here. *Volkswagen II*, 545 F.3d at 317. The Court weighs these witnesses heavily in the analysis of the convenience of willing witnesses because the materiality of their testimony is agreed and relied upon by both sides.

Plaintiffs name ▋ additional employee witnesses of Trend who are located in Irving, Texas and likely witnesses. The Court credits Plaintiffs' argument that Trend's ▋▋▋

████████████████████████████████ in Irving, Texas, is a likely witness because Plaintiffs provide evidence for the uniqueness and relevance of his substantive testimony on the Deep Discovery product. ECF No. 81 at 10 (citing Ex. F (ECF No. 81-8) at 9:11-12, 10:11-20). The Court credits Plaintiffs' argument that ████████, the ████████████████████████, is a likely witness from Trend's Irving, Texas office. *Id.* Trend does not dispute Ms. ███ will testify. Her critical role on the Vision One product is documented in depositions taken for venue discovery. *Id.* (citing Ex. G (ECF No. 81-9) at 94:8–15). Vision One is an accused product and ties in to the accused TippingPoint Product. ECF No. 53 ¶¶ 114, 118.[9]

In summary, both districts have relevant, unique willing witnesses within 100 miles of the respective venues. Ultimately, considering numerosity but also uniqueness and materiality of likely witnesses, the Court finds that the witnesses in both districts neutralize each other and make this factor neutral at most.

Aside from the witnesses that Trend and Plaintiffs specifically named in NDCA and WDTX, the Court is unpersuaded by the voluminous lists of unnamed possible witnesses. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("[I]t is reasonable to reject vague and unsupported statements regarding the location of potential witnesses or sources of proof."). Trend states that it "has its ████████, ████████████████████████, and its ████████████████ in NDCA." ECF No. 89 at 4 (citing Ex. 57 (ECF No. 89-22) at 63:9–15, 81:14–82:19; Ex. 59 (ECF No. 89-24); Ex. 38 (ECF No. 89-3) at 128:10–17). However, the "████████, ████████████████████████" are not identified in those citations, and while Trend's "████████████████████████████

---

[9] The Court finds unpersuasive Trend's assertion in its transfer motion that neither TippingPoint nor Cloud One Network Security are "among the accused products," because in the very same paragraph, Trend concedes that the infringement contentions identify TippingPoint with "respect to four dependent claims for two patents . . . for its integration with Vision One," and that "Plaintiffs [sic] infringement contentions accuse Network One." ECF No. 58 at 7.

████████" is identified as "████████████," in a deposition transcript, Ex. 38 (ECF No. 89-3) at 128:13–15, neither Ms. ████████ nor the ████ unspecified sales individuals are identified as potential witnesses. The fact that a company "has" an employee does not convert that employee into a potential witness. Trend vaguely points to dozens if not hundreds of unidentified people, including attachments to the briefs with attorney-created lists that exceed page limits. *E.g.*, ECF No. 89 at 2 ("70 likely witnesses in NDCA"); *id.* at 3 ("55 are likely witnesses (1-2 per product for 32 products)"); *id.* (██ engineers identified by Trend across three different products and features all purportedly knowledgeable about Deep Discovery XDR, Deep Discovery Analyzer, Vision One, or Predictive Machine Learning Engine); ECF No. 58 at 3, 6 (same). The Court considers vaguely pointing to people without establishing if they are likely witnesses inconsistent with the movant's burden of proof under *Volkswagen II* and obligation to come forward with evidence. *Volkswagen II*, 545 F.3d at 314 n.10.

Trend makes a vague generalization about Taiwan-based employees that the Court does not afford a great deal of weight because it is inapposite to the willing-witness *Volkswagen* factor for two reasons. First, Trend does not name any specific willing witnesses who are likely to come from Taiwan. Although Trend states under its convenience of willing-witness factor argument that Taiwan-based employees "could work at the Trend Micro facility in San Jose during their presence at trial," ECF No. 58 at 8, such statement is devoid of any citation to who those "Taiwan-based employees" are. Although Trend's corporate declaration provides the names of ██ Trend engineers based in Taiwan, ECF No. 58-1 ¶ 11, that paragraph is not cited in Trend's willing-witness argument, but instead only cited by Trend's transfer motion's facts section, ECF No. 58 at 3, which even still does not indicate any of them are a "witness" that will be called at a trial. Second, Trend's San Jose office ████ during the initial venue briefing, so that Trend now leases only a ████

██████████. The notion that anyone could now "work at the Trend Micro facility in San Jose during their presence at trial" is █████████. Because Trend does not rely on any specifically named Taiwan employees under this factor to be called as witnesses at trial, the Court will not infer that the employees from Taiwan will be called.

Plaintiffs make a vague generalization about a Sustained Engineering Group at Trend's headquarters in Irving that the Court does not afford a great deal of weight. Plaintiffs allege that an █-person team of engineers in its Irving headquarters write code related to the Accused Products and should affect the convenience of willing-witnesses factor. ECF No. 81 at 10. Trend's and Plaintiffs' dispute over whether these code writers are "involved in the development of the accused products," *id.* at 10 n.9, or "just fix bugs for products that have already been developed," ECF No. 89 at 4, puts the cart before the horse by arguing the substantive merits of individuals who are not specifically named in the brief as witnesses to be called to testify at trial. Without Plaintiffs specifically identifying such witnesses in their brief, the Court is unable to afford those individuals much weight for this factor.

If the Court were to give weight to large groups of unnamed potential witnesses, the Court would consider Trend's corporate headquarters in Texas. The Texas headquarters and Austin office of Trend contains many unnamed employees who are potential witnesses. If when evaluating this factor the Court were to consider these two groups of undefined potential witnesses, they would cancel out the large groups of witnesses in California that Trend pointed to in its motion. That Trend's NDCA Office is now ██████ further reinforces the convenience of witnesses coming from the Irving, Texas, headquarters, or using the Irving, Texas headquarters while in the area for the trial 100 miles away in Waco.

21

Considering all of the evidence, the Court finds that this factor also fails to favor transfer and fails to support NDCA as a clearly more convenient venue. *Volkswagen II*, at 314–15 & n.10.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

This factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315. One such practical problem is the pendency of other suits involving the same asserted patents or accused products. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[T]he existence of multiple lawsuits involving the same issues" can be "a paramount consideration when determining whether a transfer is in the interest of justice."); *NCS Multistage v. Nine Energy Serv., Inc.*, 20-cv-277, 2021 WL 1199623, at *3 (W.D. Tex. Mar. 30, 2021) ("A parallel action in this District involving the same patent weighs heavily in the transfer analysis.").

The parties disagree over the effect of this factor. Trend argues that the co-pendency of cases in this District does not weigh against transfer because the Court did not acquire familiarity with those co-pending suits before this suit was filed. ECF No. 58 at 12 (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). Plaintiffs argue that this factor weighs strongly against transfer because of the parallel actions. ECF No. 81 at 13.

There are several cases pending before this Court involving many of the same patents and the same or similar technology. The cases of *Webroot, Inc. et al v. Sophos LTD*, 6:22-cv-00240-ADA-DTG, and *Webroot, Inc. et al v. AO Kaspersky Lab*, 6:22-cv-00243-ADA-DTG, involve at least ten of the eleven patents asserted against Trend here. The cases are consolidated with the instant case "for all pretrial issues." ECF No. 57 at 1. Trend's reliance on *Hoffman* is misplaced. The rule about transfer being evaluated based on "the situation which existed when suit was instituted" from *Hoffman*, has to do with where the suit might have been brought, not practical

problems that make a case easy, expeditious, and inexpensive. *Hoffman*, 363 U.S. at 342–43. This Court has previously recognized that as the holding in *Hoffman*. *E.g.*, *Unification Techs. LLC v. Micron Tech., Inc.*, 20-cv-500, 2022 WL 92809, at *3 (W.D. Tex. Jan. 10, 2022) (disagreeing with the claim that the § 1404(a) inquiry cannot contemplate facts arising after an action commences). The parallel actions here, which involve some of the same patents, weigh against transfer and fail to favor transfer to NDCA. *Volkswagen II*, 545 F.3d at 314–15 & n.10.

## B.  The Public Interest Factors

### 1.  Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347. The Federal Circuit has stated that this factor is "the most speculative" factor. *Id.*

Because Trend is a direct competitor of Webroot, this is a competitor case, where speed matters. ECF No. 53 ¶ 15. Plaintiffs present Federal Court Management Statistics reported on June 30, 2022, that the median time to trial for civil cases in the NDCA is 34.7 months, compared to only 28.3 months in WDTX. ECF No. 81 at 18 (citing Ex. L (ECF No. 81-14)). The Federal Court Management Statistics are consistent with this Court's repeated recognition that congestion in the NDCA weighs against transfer. *E.g.*, *Viasat, Inc. v. W. Digit. Techs., Inc.*, 21-cv-1230, 2022 WL 17815126, at *11 (W.D. Tex. Dec. 12, 2022) ("This Court has consistently been able to hold trials faster than NDCA, with an approximate time to trial of two years.").[10]

---

[10] *See, e.g.*, *MV3 Partners v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case

The parties also disagree over how to interpret the same data. In addition to Plaintiffs' presentations of the Federal Court Management Statistics, both sides present statistics from the commercial database Lex Machina. Both sides present that data from the same time periods— NDCA's and WDTX's time-to-trial for patent cases for a period starting on September 18, 2015, and for civil cases generally starting on September 18, 2018. ECF No. 58 at 15 & n.6 (citing Exs. 32–35 (ECF Nos. 58-34–58-37)); ECF No. 81 at 14 (citing Exs. M–P (ECF Nos. 81-15–81-18)). The dispute between the parties is over how to interpret the Lex Machina and whether the data should include cases "filed" during the time period, or merely "pending" during the time period. ECF No. 81 at 14; ECF No. 89 at 7. The Court finds that both parties' presentation of Lex Machina unpersuasive as it is unreliable. *In re Genentech*, 566 F.3d at 1347. Both sides present Lex Machina data consisting entirely of whisker graphs comparing each district. Neither party presented the underlying data—that is the underlying cases in the dataset. Neither party proffered an expert or custodian on the data. But the data is clearly anomalous. Both parties' whisker graphs for NDCA depict the lowest time-to-trial value as *twenty-five (25)* days. Ex. 32 (ECF No. 58-34) at 1; Ex. M (ECF No. 81-15) at 1. And both sides' lowest time-to-trial in patent cases in NDCA is presented by the parties as 180 days, a similarly incredible statistic. Ex. 34 (ECF No. 58-36) at 1; Ex. N (ECF

---

filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, No. 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, No. 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv., Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24.0 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, No. 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial).

No. 81-16) at 1. The Court will not assign much weight to the Lex Machina data presented in this case because it cannot be validated, has errors, and there is no indication the data was reviewed for publication.

The unrebutted Federal Court Management Statistics weigh against transfer. None of Trend's arguments support its burden of proving NDCA is clearly more convenient.

### 2.  Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). A local interest is demonstrated by a relevant factual connection between the events that gave rise to a suit and the venue. *In re Apple*, 979 F.3d at 1345.

Trend argues that the local interest factor favors transferring the case. Trend asserts that its NDCA office was the locus of design and development of "numerous" accused products in the United States, while its Austin Office's focus on TippingPoint and Cloud One Network Security is unaccused. Trend cites its arguments about the relevance of willing witnesses in NDCA, including approximately ████ engineers that work at Trend's San Jose office, as supporting a local interest in NDCA.[11] ECF No. 58 at 13–14.

Plaintiffs argue this factor weighs heavily against transfer. Plaintiffs point to four OTI offices in this District or within 100 miles of the Waco Division, including one where dozens of employees work, located at 15725 Dallas Pky in Dallas, TX. ECF No. 81 at 15. Plaintiffs argue

---

[11] Trend relies on internal cross references to make its evidentiary points on the local interest factor, once citing to "*supra*, § III.B.1," and later "*supra* § II.B.1," but the latter is not a section in the brief. ECF No. 58 at 13–14. The Court assumes the latter *supra* was to the same subsection as the former.

that Trend's global headquarters—with ███ employees—is in Irving, Texas, less than 100 miles from the Waco courthouse, and gives Waco a localized interest in this case. *Id.* (citing *Kajeet, Inc. v. Trend Micro, Inc.*, 21-cv-389, 2022 WL 126490, at *8 (W.D. Tex. Jan. 12, 2022)). In a prior case involving overlapping accused products and witnesses, Trend stated that from the Irving office, Trend's U.S. Officers direct, control, and coordinate Trend's product development and innovation activities. *Id.* at 1, 3, 15 (citing Ex. A (ECF No. 81-3) ¶ 7). Citing *GeoTag*, Plaintiffs argue a district that is home to a party's headquarters "maintains a strong local interest in the resolution of this suit." *Id.* (citing *GeoTag, Inc. v. Aromatique, Inc.*, 10-cv-570, 2013 WL 8349856, at *6 (E.D. Tex. Jan. 14, 2013)). Plaintiffs rebut Trend's assertion that its office space in NDCA weighs against transfer, because prior to Plaintiffs' opposition brief, Trend transitioned into a ████████ ███████████████████. *Id.* at 15–16. Trend also has another office in this district in Austin, Texas, with ███ employees where at least one of the Accused Products was designed and developed. *Id.* at 3, 15 (citing ECF No. 58-1 ¶ 5).

The Court finds that Trend's ██████ sq. ft. headquarters approximately 100 miles from the Waco Courthouse creates a local interest here. *Kajeet v. Trend Micro*, 2022 WL 126490, at *8. Trend witnesses relating to Tipping Point, Vision One and Cloud One are also in Austin and Irving; and the Court finds that at least some of their development work is relevant to the issues in this case. Trend's argument to distinguish the Tipping Point and Cloud One Network Security witnesses is unpersuasive because, as discussed above for the compulsory process factor, disagreements about the infringement contentions will undoubtedly be raised in this case and can be resolved at the merits stage. Trend failed to submit sufficient information to conclude that more relevant design and development activities took place in NDCA than WDTX. OTI has four offices within 100 miles of the Waco courthouse. Additionally, both parties have offices in Austin and the

Dallas area, meaning that Waco is in between the two locations where the companies have offices in Texas, and both of those cities are approximately 100 miles away from Waco. Any employees driving between Dallas and Austin would travel through Waco on I-35. Additionally, Trend's substantial reliance on its office in NDCA is severely undercut by the ███████ of that office shortly after its opening brief was filed. Although the company has moved into a █████████████, its transfer motion was premised on a much █████████, demonstrating either a lack of research on physical office space for the venue motion or a deliberate attempt to manipulate venue. The result is that this factor fails to favor transfer to NDCA or demonstrate that NDCA is clearly more convenient because of a local interest. *Volkswagen II*, 545 F.3d at 314–15 & n.10.

### 3.  Familiarity of the Forum with the Law That will Govern the Case And

### 4.  Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties agree that these factors are neutral. ECF No. 58 at 15; ECF No. 81 at 16. The Court agrees. As it is Trend's burden to prove NDCA is clearly more convenient—rather than Plaintiffs' burden to prove it is not—these neutral factors do nothing to support Trend's Motion.

## IV.  MOTION FOR RECONSIDERATION

Trend filed a motion for reconsideration of the Court's March 7, 2023, Transfer order based upon subsequent intervening caselaw. Trend's motion is untimely, premised on misplaced arguments, and reargues its prior venue briefing. Trend suggests that the time between the Court's ruling on the motion and this written opinion should weigh against transfer on this factor. Trend's cited case of *Tik Tok* is inapposite. In that case, the Court *did not rule* on the §1404 motion for nearly a year after it was filed, and when it did rule, the Court weighed post-motion knowledge against transfer. *See* ECF No. 119 at 6. Here, neither of those things are true. The Court issued a

ruling at the Hearing on Trend's motion, the hearing which was held approximately 4 months after the motion was filed, 29 days after the response brief in opposition was filed, and just five days after Trend's sur-sur-reply on the motion was filed. Nor does this order memorializing the order at the hearing rely on post-motion facts. The timing of this written order has no bearing on the *Volkswagen* factors for transfer.

Trend's motion for reconsideration introduces new arguments based on evidence that was available at the time of Trend's opening motion. This case is at an advanced stage, with the Markman having occurred on May 3, 2023, ECF No. 116, and Trial to occur on November 12, 2024. Lead case (-243), ECF No. 521. Trend has not sought leave to reopen the transfer dispute. Reconsidering venue at this stage of the case would prejudice the parties as it would introduce substantial unpredictability into venue with no logical endpoint. That is why the Order Governing Proceedings for Patent Cases in this Court requires that any motion to transfer filed later than the prescribed deadline "must show good cause for any delay and seek leave of court." OGP 4.3 at 5. Trend has not sought leave to re-raise transfer. An example of Trend's late use of previously available evidence is that Trend claims it "identified . . . in its motion to transfer" ▇ Taiwan-based engineers and ▇ San Jose-based employees as the "most relevant witnesses here"—and for support Trend cites to its corporate declaration in support of its motion. ECF No. 119 at 3 (citing ECF No. 58-1 at 3, 5). A review of the transfer motion shows that none of the Taiwan-based engineers were identified by name in the transfer motion. The paragraph of the corporate declaration naming those Taiwan-based individuals (ECF No. 58-1 at 5 (¶ 11)) was not even cited in Trend's section on the convenience of willing witnesses. Not only have the likely witnesses already been raised and adjudicated, but Trend attempts to reargue the convenience of willing witnesses factor based upon the number of out-of-state witnesses who have received deposition

notices. ECF No. 119 at 3–4. This is not only untimely, but it misses the mark—deposition witnesses can and likely will have their testimony read into the record at trial without appearing again. The witnesses likely to be called in person at trial is separate from that.

Trend also makes an inapposite argument about the sources of proof factor. First, Trend doubles down on its corporate declaration that Trend's "strategic center" for the accused products "is in San Jose." ECF No. 119 at 4 (citing ECF No. 58-1 at 3). Trend's reference to the November 11, 2022, Corporate Declaration is striking because evidence during the initial venue briefing showed that Trend's San Jose office ███ and was ████████████████. Trend also makes an inapposite comparison to *In re TikTok*. In that case, source code was only accessible in China and NDCA due to security restrictions. *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023). Here, by contrast, Trend has not identified security restrictions that prohibit documents from being equally accessible in Texas as in NDCA. Indeed, the opposite is certainly true. Trend's *headquarters* are 100 miles from Waco, in Irving, Texas, whereas NDCA now simply has a ████████████████ by Trend.

Trend also argues that its identification of "over 100 third party witnesses" in an exhibit submitted with its reply should cause this factor to weigh against transfer. ECF No. 119 at 7 (citing ECF No. 89-49). As this Court identified in ruling on the underlying motion, Trend pointing to dozens or hundreds of potential employees is not probative of who actually may be a likely or necessary witnesses worth transferring this case to another district. Additionally, Trend's reference to the ECF No. 89-49 ("Exhibit 84") list, prepared specifically for this litigation, is both untimely (submitted in reply for first time) and an improper attempt to exceed page limits (because the witnesses do not appear in the underlying briefing). For the foregoing reasons, Trend's Motion for

reconsideration does not present a persuasive argument that the Court should reconsider its ruling of March 7, 2023. Thus, the motion is **DENIED**.

## V.    MOTION TO STAY

Trend filed a motion to stay the case "until the Court issues a written opinion on venue and resolves any objections to that opinion." ECF No. 123 at 6. A written opinion has now been issued on Trend's motion to transfer, ECF No. 58, as well as the motion for reconsideration of the transfer ruling, ECF No. 119. At this time, there are no additional objections or motions for reconsideration pending before the Court on the transfer ruling. The Court will not stay the case until it "resolves any objections to" this written opinion. That would cause a delay in the case for no reason other than speculation. Thus, Trend's motion to stay is **DENIED**.

## VI.    CONCLUSION

When considering all of the factors, the Court finds that Trend failed to carry its burden of proving the Northern District of California is "clearly more convenient." *Volkswagen II*, 545 F.3d at 314–15 & n.10. It would not serve "the convenience of parties and witnesses" or "the interest of justice" to transfer this case under 28 U.S.C. § 1404. Because NDCA is "not clearly more convenient than the venue chosen by" Plaintiffs, "plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. Thus, Trend's motion, ECF No. 58, is **DENIED**. Additionally, as stated above, Trend's Motion for Reconsideration, ECF No. 119, is **DENIED**. Further, Trend's Motion for a Stay, ECF No. 123, is **DENIED**.

**IT IS SO ORDERED.**
**SIGNED** this 5th day of January, 2024.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE